```
                  UNITED STATES DISTRICT COURT
                           FOR THE
                      DISTRICT OF VERMONT
```

VERMONT COALITION FOR           )
COMMUNITY SCHOOLS, INC.,        )
LAURA SCHALLER, TOWN OF         )
MORETOWN,                       )
                                )
        Plaintiffs,              )
                                )
        v.                       )      Case No: 2:20-cv-17
                                )
HARWOOD UNIFIED UNION SCHOOL    )
DISTRICT,                       )
                                )
        Defendant.               )

## OPINION AND ORDER

This is an action for injunctive and declaratory relief. Plaintiffs Vermont Coalition for Community Schools, Inc. ("VTCCS"), Laura Schaller and the Town of Moretown seek an order compelling the Board of the Harwood Unified Union School District ("HUUSD") to add two items to the warning and ballot for HUUSD's annual meeting. The proposed items, if approved at the annual meeting, would transfer final authority for school closures and major configurations from the Board to the voting public. The Board has rejected the proposals, contending in part that they are overly-broad and would involve the electorate in matters—including grade configuration and the use of classrooms and buildings—that are within the Board's authority.

Plaintiffs bring this suit claiming violations of their state and federal rights. They also move the Court for a temporary and preliminary injunction (ECF No. 9), which the Court

now considers.  For the reasons set forth below, the motion for a temporary and preliminary injunction is **denied**.

## Factual and Procedural Background

On January 14, 2020, VTCCS submitted two petitions to the HUUSD Board.  There is no dispute that the petitions were signed by over 5% of the relevant electorate.  The petitions ask the Board to warn and place on the ballot two articles for consideration at its next annual meeting, which will reportedly be held on March 2, 2020.

The first proposed article seeks to amend Article 6(E) of HUUSD's Articles of Agreement.  Article 6(E) currently allows the Board to close a school by means of a two-thirds vote in favor.  The amendment proposed by VTCCS would allow the Board to *propose* a school closure, but the closure could not take place without approval by a simple majority of the town in which the school is located.  In the case of a middle or high school, final approval would need to come from a simple majority of the electorate of the towns served by the school.  Each such vote would be conducted by Australian ballot.  The proposed amendment to Article 6(E) states that "[c]losure of a school includes wholly or partially repurposing a school building from classroom instruction to another use."  ECF No. 1-1 at 18.

Article 6(E) currently prohibits the Board from closing a school within four years of the formation of HUUSD.  As the

school district was formed in 2017, the Board cannot close any schools prior to July 1, 2021.

The second proposal seeks to amend Article 12 of the Articles of Agreement. Article 12, entitled "Traditional Continuity for Resident Students," provides that after July 1, 2018 the Board "may adjust enrollment, boundaries, and school configurations" within the school district. ECF No. 1-1 at 19. The proposed amendment would add the term "major configuration," defined in part as "a new school configuration where one or more grades would be moved from an elementary or middle school to another school, or any other change that would result in ten or more students from an elementary school or middle school being moved to another school." *Id.* The amendment to Article 12, similar to the proposed amendment to Article 6(E), would allow the Board to propose such a major configuration but would place final authority for approval with the electorate. The amendment would also render any prior Board votes relating to major configurations null and void.

The proposed amendments to Article 6(E) and Article 12 follow the Board's decision to move all students from Harwood Middle School to the other middle school in the district, and to also relocate fifth and sixth graders from Moretown Elementary School. Plaintiffs contend that in doing so, the Board failed to fully comply with the current Article 6(E). In addition to the

3

provisions discussed above, Article 6(E) requires that prior to a school closure the Board must hold three or more public meetings, at least one of which must be held in the "community" in which the school is located. ECF No. 1-1 at 18. Plaintiffs allege that the Board never held a public hearing in Moretown. *Id.* at 9. Their proposed amendments would require the Board to hold public hearings, once in the event of a proposed closure of K-8 schools and twice in the event of a proposed major configuration, in the town (rather than the "community") in which the school is located. *Id.* at 18-19. Plaintiffs also allege that the Board has failed to seek appropriate public input when filling Board vacancies, as reportedly required by Act 46.

On January 22, 2020, the Board rejected the proposed amendments to both Article 6(E) and Article 12. With respect to Article 6(E), the Board reportedly found that while the electorate has the exclusive authority to amend that Article, the proposed definition of closure is overly-broad. Hearing testimony made clear that the Board's concern focused primarily on the final sentence of the proposed amendment. The Board therefore passed the following motion:

> Move that the Harwood Unified Union School District Board reject the petitioned article calling for voter approval of school closures because the petitioned article includes a very broad definition of school closure that would grant the electorate authority to dictate matters that are clearly within the board's authority to decide, namely grade configuration and the use of classrooms and buildings.

4

ECF No. 1-1 at 12-13.  The Board also rejected the proposed amendment to Article 12, reportedly concluding that the electorate does not have the power to amend that Article.  The Board further found that "the school board, not the electorate, has the authority to make policy and to decide how the buildings within their district will be used and managed."  ECF No. 5 at 5.

Plaintiffs filed suit in state court on January 24, 2020, bringing three causes of action.  Count I alleges that HUUSD violated 17 V.S.A. § 2642 by failing to place the petitioned articles on its annual meeting warning and ballot.  Section 2642 of Title 17 states that a "warning shall also contain any article or articles requested by a petition signed by at least five percent of the voters of the municipality and filed with the municipal clerk not less than 47 days before the day of the meeting."  17 V.S.A. § 2642.  The Complaint alleges that the five percent figure has been verified, and the petitions were presented to the Board 47 days prior to the March 2, 2020 annual meeting.

Count II of the Complaint claims that HUUSD violated the rights of VTCCS members and Laura Schaller to petition and instruct the government.  Those rights are allegedly guaranteed by the First and Fourteenth Amendments to the United States Constitution, and Chapter I, Article 20 of the Vermont Constitution.  Count III similarly claims that the Board's

decision not to include the petitions on HUUSD's annual meeting warning and ballot violated VTCCS members' and Ms. Schaller's due process rights under the Fifth and Fourteenth Amendments to the United States Constitution, and Chapter I, Article 10 of the Vermont Constitution.

For relief, the Complaint seeks a temporary and preliminary order requiring HUUSD to place the petitioned articles on its annual meeting warning and ballot; a declaration that HUUSD violated VTCCS members' and Ms. Schaller's constitutional rights; a declaration that Plaintiffs are entitled to a mandamus or other order compelling HUUSD to include the petitioned articles on the annual meeting warning and ballot; and an award of attorney's fees and costs.

Concurrent with its state court Complaint, Plaintiffs filed a motion for temporary and preliminary injunction. The motion requests a hearing prior to January 31, 2020, as state law requires warning of the HUUSD annual meeting not less than 30 days before the March 2, 2020 meeting date. *See* 17 V.S.A. § 2641. On January 29, 2020, HUUSD removed the case to this Court. The Court held a hearing on Plaintiffs' pending motion on January 31, 2020.

## Discussion

### I. Preliminary Injunction Standard

The Second Circuit holds that in order to prevail on a

motion for a preliminary injunction, a party must establish: "(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *MyWebGrocer, LLC v. Hometown Info., Inc.*, 375 F.3d 190, 192 (2d Cir. 2004) (quoting *Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*, 312 F.3d 94, 96 (2d Cir. 2002)). "To establish irreparable harm, plaintiffs must demonstrate an injury that is neither remote nor speculative, but actual and imminent." *Id.* (citations omitted).

Where a party seeks a preliminary injunction that will impact governmental action "taken in the public interest pursuant to a statutory or regulatory scheme, the injunction should be granted only if the moving party meets the more rigorous likelihood-of-success standard." *Sussman v. Crawford*, 488 F.3d 136, 140 (2d Cir. 2007) (citations omitted). "This higher standard is particularly appropriate when a plaintiff seeks a preliminary injunction against a government body such as a school district." *Cave v. East Meadow Union Free Sch. Dist.*, 480 F. Supp. 2d 610, 632 (E.D.N.Y. 2007). "For mandatory injunctions, which alter rather than maintain the status quo," such as the one at issue here, "the movant must show a clear or substantial likelihood of success on the merits." *New York Civil Liberties*

*Union v. New York City Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012) (internal quotations omitted).

Plaintiffs contend that the less stringent, "sufficiently serious questions" standard applies as this is a dispute between two public bodies, the school district and the Town of Moretown. The Second Circuit has allowed that where "there are public interest concerns on both sides," the serious-questions standard "would be applicable." *Time Warner Cable of New York City L.P. v. Bloomberg L.P.*, 118 F.3d 917, 924 (2d Cir. 1997); *see also Trump v. Deutsche Bank AG*, 943 F.3d 627, 638 (2d Cir. 2019), *cert. granted*, No. 19-760 (19A640), 2019 WL 6797733 (U.S. Dec. 13, 2019). Plaintiffs argue that they can also meet the likelihood of success standard. Both standards require irreparable harm.

**II. Irreparable Harm**

Plaintiffs submit that the Board's denial of the petitions deprived them of their constitutional rights. Their supporting memoranda, however, do not fully set forth the contours of their constitutional claims or any corresponding right to relief. While they argue that a violation of a constitutional right is *per se* irreparable harm, they have not yet adequately supported their claim of a constitutional violation.

As to actual harm, Plaintiffs argue that the failure to warn their proposed amendments denies them the benefit of voting on

8

those items at the March 2020 annual meeting. While that may be accurate, there appear to be other avenues for votes prior to the commencement of the 2020-2021 school year. One example suggested by HUUSD is the June 2020 bond vote. Plaintiffs could also petition the Board to call a special meeting. Although Plaintiffs argue that attendance will likely be higher at Town Meeting than at a specially-called meeting, they offer no support for the contention that the difference between the two meetings, either in time or voter attendance, would constitute constitutional and irreparable harm. Finally, HUUSD submits that if the electorate is dissatisfied with the Board's actions, it could vote on March 3, 2020 to reject the district's annual budget. These alternatives undermine Plaintiffs' claims of irreparable harm.

**III. The Merits**

With respect to the substance of their claims, Plaintiffs fail to meet either the likelihood of success standard or the less-stringent "sufficiently serious questions" test.

**A.   Article 6(E)**

Plaintiffs assert that amendment of the Articles of Agreement is within the power of the electorate. Title 16, Section 706n(a) provides that any article previously "set forth as a distinct subsection under Article 1 of the warning required by section 706f of this chapter and adopted by the member

9

districts at the vote to establish the union school district . . . may be amended only at a special or annual union district meeting." 16 V.S.A. § 706n(a). Amendment is conducted by means of a public vote by Australian ballot. *Id.* The parties agree that Article 6(E) (closure) meets the Section 706n(a) requirements.

While it may be within the power of the electorate to amend Article 6(E), the Board rejected the proposed amendment as overly-broad. In *Skiff v. South Burlington School District*, 2018 VT 117, 201 A.3d 369, the Vermont Supreme Court acknowledged that "a municipality (or school board) has discretion to refuse to include a petitioned article in a town-meeting vote if the subject matter of the article concerns a matter outside of the voters' authority." *Id.*, ¶ 14. The plaintiffs in *Skiff* sought to bring a petitioned article for a district-wide vote regarding the name of the district's athletic teams. Citing 17 V.S.A. § 2642(a)(2), which requires a board to warn items concerning "the business to be transacted," the Vermont Supreme Court opined that "[t]he statute does not include a right to include articles for a vote over which voters may have an opinion, but ultimately do not have the power to decide." *Skiff*, 2018 VT 117, ¶ 22.

Here, the Board determined that the amended Article 6(E) would give the electorate powers that are exclusively within the Board's discretion. In particular, the Board cited the broad

definition of school closure. Under the proposed amendment, the electorate would govern not only the closure of entire schools, but also "wholly or partially repurposing a school building from classroom instruction to another use." ECF No. 1-1 at 18. In other words, a decision to re-purpose only a portion of a school building for a use other than classroom instruction could arguably require a town-wide or district-wide vote. Although Plaintiffs discourage a broad reading of the proposed language, they offer no authority for the proposition that such decisions are beyond the exclusive authority of the Board.

Plaintiffs do cite the Agency of Education's ("AOE") Draft Default Articles of Agreement ("Draft Articles"). ECF No. 1-1 at 33-57. The Draft Articles include two closure provisions, each of which vests the voters of the relevant town or newly-formed district with the exclusive power to close a school. *Id.* at 38-39. The AOE also recommends that the ability to amend those provisions lie solely with the voters and not the school board. *Id.* HUUSD submits that the Draft Articles are not relevant to this case, as they were drafted to guide school districts that were compelled to merge under Act 46. HUUSD was not one of those districts.

Plaintiffs further compare their proposed amendments to AOE definitions of closure. The AOE materials state that "[m]oving all grades to another school or schools would be considered

'closure' and so would be subject to these protections even if the building were used for another school related purpose." ECF No. 1-1 at 56. Plaintiffs' definition of closure, in contrast, contemplates less than the entire school and, specifically, fewer than all classrooms.

HUUSD denies that any of the Board's recent actions, including moving students from Harwood Union Middle School and Moretown Elementary School, constitute closures. The Court need not decide that issue at this time. The Court does find that the Board properly viewed the proposed amendment as usurping the powers granted to school boards by the Vermont Legislature.

Vermont law provides broad authority to school boards to "have possession, care, control, and management of the property of the school district," subject to any authority vested in the electorate. 16 V.S.A. § 563(3). A board's authority also extends to the relocation or discontinuation of the use of a school building. *Id.* § 563(7). The power of the electorate, while significant, is more limited in scope. *See* 16 V.S.A. § 562(2)-(10). As the Vermont Supreme Court explained in *Skiff*,

> [t]he powers of the electorate are delineated by statute and include discrete items, including voting for the annual salaries for school-board members and authorizing the amount of money to be expended. 16 V.S.A. § 562. . . . In contrast, the school board has broader, more general powers, including . . . taking "any action that is required for the sound administration of the school district." *Id.* § 563(1), (2).

12

2018 VT 117, ¶ 24.

Here, the Board found school closures, as defined to include partial re-purposing of school buildings, to be beyond the power of the voters. For purposes of the preliminary injunction analysis, the Court is persuaded that Plaintiffs are not likely to prevail on their Article 6(E) claim. The Court also finds that there are not sufficiently serious questions going to the merits of the Article 6(E) issue to make them a fair ground for litigation, that the balance of hardships does not tip decidedly in Plaintiffs' favor, and that Plaintiffs have not demonstrated irreparable harm.

B. **Article 12**

Amendment of Article 12 (configuration) is governed by 16 V.S.A. § 706n(c), which states that any provision included in the Articles of Agreement that "was not set forth as a distinct subsection under Article 1 of the warning may be amended by a simple majority vote of the union board of school directors, or by any other majority of the board as is specified for a particular matter in the report." Plaintiffs argue that the phrase "may be amended" means that other entities, and not just the Board, have the power to amend under subsection (c) of Section 706n. ECF No. 9 at 3. A plain reading of the statute, however, reveals references only to a board majority. The word "may" empowers school boards to amend. The absence of the word

"only" does not broaden the statute. Without support from a legislative history or other reliable source, the Court declines to view the word "may" as opening the amendment process to groups or entities other than the board majority designated by the Legislature.

In an effort to support amendment of Article 12, Plaintiffs again reference the AOE Draft Articles, which state: "For purposes of these Articles, the words 'restructuring of grade configurations,' 'restructuring,' and any grammatical variations mean eliminating all classrooms for any grade or grades operated at one or more schools and requiring children in the grade or grades to attend classrooms located in a different school." ECF No. 1-1 at 38. Again, Plaintiffs' proposed amendment is different, as it contemplates defining "major reconfiguration" as any change "that would result in ten or more students from an elementary or middle school being moved to another school." *Id.* at 19. Accordingly, even assuming the AOE Draft Articles are relevant to HUUSD, their provisions do not support Plaintiffs' position.

The Board concluded that the proposed amendment to Article 12 was improper because the Board, and not the electorate, has the authority to make policy and decide how the buildings in the district will be used and managed. In light of the broad authority given to school boards in Vermont, as discussed above,

and absent persuasive authority favoring Plaintiffs' position, the Court finds that Plaintiffs have failed to satisfy either the likelihood of success standard or the "sufficiently serious questions" and balancing of hardships standard for preliminary injunctive relief, and have failed to show irreparable harm with respect to Article 12.

## Conclusion

For the reasons set forth above, Plaintiffs' motion for a temporary and preliminary injunction (ECF No. 9) is **denied**.

DATED at Burlington, in the District of Vermont, this 31st day of January, 2020.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge
